UNITED STATES of America,
Plaintiff–Appellee,

v.

David Louis GAVIN, Defendant–
Appellant.

No. 90–10580.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1991.

Decided March 16, 1992.

As Amended June 26, 1992.

Hayden Aluli, Asst. Federal Public Defender, Honolulu, Hawaii, for defendant-appellant.

Stuart Gasner, Asst. U.S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before ALDISERT *, GOODWIN and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

David Louis Gavin appeals his conviction of abusive contact with another by putting her in fear, in violation of 18 U.S.C. § 2244(a)(2). The incident occurred on Kwajalein Atoll, a special maritime and territorial jurisdiction of the United States, and so within the reach of 18 U.S.C. § 2244. The major issue on the appeal is whether Gavin was entitled under Federal Rules of Criminal Procedure 31(c) to an instruction on a lesser offense, sexual contact without the other person's permission, as an offense necessarily included within the offense of which he was charged. We agree that he was not and affirm his conviction.

## FACTS

Looking at the evidence from the viewpoint most favorable to the government, the jury could have found the following: David Gavin, a 28–year–old engineer, was temporarily assigned to a boat on Kwajalein. He encountered X, a 13–year–old girl who lived on the island and on several occasions called her at home about social events. On June 28, 1989 he joined her and her 14–year–old friend Sandra Schultz, at the Richardson, an outdoor movie theatre. He asked X if she would like a pizza. She and Sandra Schultz accepted his invitation. He ordered the pizza from the Yokwe Yuk

---

* The Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

Club and suggested that the girls drive around with him in his truck until the pizza was ready. They accepted the invitation.

The girls asked him to pick up a third friend, Carrie Connolly, and Gavin drove to her house. En route, he stopped the truck, retrieved a bottle of wine from the back, poured it, and gave tumblers to the girls. X drank all of her tumbler and a portion of Sandra Schultz's.

At the Connolly house, Sandra Schultz got out to knock at the door. Gavin put his arm around X, started tickling her and asked her if she wanted to "go out or something." She told him "No." Carrie Connolly could not join them. Gavin drove the two girls back to the Yokwe Yuk Club and picked up the pizza. While he was out of the truck getting the pizza X asked Sandra Schultz not to leave her alone with him, saying that he was "starting to act differently." She later testified that she wanted Sandra Schultz "not to leave me alone with this guy because I was sort of getting scared." When he returned he brought three beers, offering one to each of the girls; Sandra Schultz accepted, X refused the offer.

The girls then asked Gavin to drive by the Richardson Theatre so they could talk with Kathleen Wanslow, another friend. Sandra Schultz got out to find her. X tried to stop her going without success. Gavin took X's arm and told her to stay.

Gavin drove off in the truck, with X asking him to return and take her back to her friends. At one point he pulled off the road and kissed her. He then drove to the automotive building parking lot behind the Kwajalein police station. He stopped the truck, put his arm around X and smelled her hair. He told her that her hair smelled good. He kissed her. She pulled away and said that she had to go back to the theatre. He put the truck in gear and moved it toward the other end of the parking lot. He stopped the truck and turned off the lights. He gave her several more kisses. He slipped his hand through her shirt and started feeling her breasts. He moved the shirt over and sucked one breast. He put his hand into her pants, started rubbing her pubic area, and put his finger near her vagina for about 45 seconds. He also put her hand on the front of his pants. She tried to get away, but Gavin grabbed her and locked the door on her side. She repeatedly told him, "I have to go back, please stop." She did open the door, got out of the car and walked back to the theatre. Gavin came along side her in the truck and asked if she wanted a ride; she refused the offer. She was found by her friends at a bowling alley, sitting on the ground sobbing hysterically.

Sandra Schultz called her father, William Schultz, who, when he saw X's state, insisted that she report the matter to the police. She did so that evening, stating that Gavin had touched the outer portion of her vagina. The next day she gave a statement to an investigator from the Army Criminal Investigation Division and stated that Gavin had penetrated her vagina with his finger.

### PROCEEDINGS

Gavin was charged with four crimes. Count 1: that he knowingly caused X, by placing her in fear, to engage in a sexual act, "to wit, penetrating her vagina with his finger with the intent to arouse his sexual desire," in violation of 18 U.S.C. § 2242(1). Count 2: that he knowingly engaged in, and attempted to engage in, a sexual act with X, a person at least 4 years younger than he, in violation of 18 U.S.C. § 2243(a) (sexual abuse of a minor). Count 3: that by placing X in fear he knowingly engaged and caused her to engage in sexual contact "by intentionally touching her vagina, breasts, groin, and inner thigh directly and through the clothing, and by placing her hand on his genitalia and groin through his clothing," in violation of 18 U.S.C. § 2244(a)(2). Count 4: that he knowingly engaged in sexual contact with X and caused her to engage in it by intentionally touching her vagina and the other bodily parts just mentioned, in violation of 18 U.S.C. § 2244(a)(3).

The trial lasted three days. The chief prosecution witness was X, whose testimony supported the indictment. The chief defense witness was Gavin, who denied the charges. Outside of court one of the jurors conducted an experiment with his girlfriend, attempting to penetrate her vagina digitally while they were seated in a car. He reported this experience in detail to the other members of the jury. He told them that he found it impossible to achieve finger penetration without his girlfriend's active cooperation and assistance. The jury acquitted Gavin on three of the four counts but found him guilty on Count 3.

Gavin appeals, challenging the constitutionality of the statute; the failure to give an instruction that he could be convicted of the lesser included offense of sexual contact without permission, 18 U.S.C. § 2244(b); the selection of the jury; the court's use of an *Allen* charge to the jury; the court's failure to grant a mistrial because of misconduct of a juror; and the failure to give an instruction to the jury that it must be unanimous as to the part of the body he touched.

## ANALYSIS

### *The Constitutionality of the Statute*

The statute under which Gavin was convicted operates by cross reference: "Whoever, in the special maritime and territorial jurisdiction of the United States ... knowingly engages or causes sexual contact with or by another person, if to do so would violate ... § 2242 of this Title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than three years, or both," 18 U.S.C. § 2244(a)(2). The cross-referenced statute provides: "Whoever in the special maritime and territorial jurisdiction of the United States ... knowingly (1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury or kidnapping) ... or attempts to do so, shall be fined under this title, imprisoned not more than 20 years, or both," 18 U.S.C. § 2242(1).

■ Gavin contends that the statute is unconstitutionally vague because it fails to define fear. The statute does exclude fear of certain perils but otherwise the object of the fear is unmentioned. The legislative history states that the "requirement of force may be satisfied by a showing that the threat or intimidation created in the victim's mind an apprehension or fear of harm to self or others." H.R.Rep. No. 594, 99th Cong., 2d Sess., *reprinted in* 1986 *U.S.C.C.A.N.,* 6186, 6196. A reasonable construction of section 2242(1) is that it encompasses all fears of harm to oneself or another other than death, serious bodily injury or kidnapping. A person of ordinary intelligence would understand the kind of fear the statute prohibits is fear of harm to self or others. The possible range of "harm", like the possible range of "fear," is very large; it is possible to think of harms, such as embarrassment, not encompassed by the statute. But as applied in the present case, the statute was not vague. *United States v. Fitzgerald,* 882 F.2d 397, 398 (9th Cir.1989).

### *The Lesser Included Offense*

■ Rule 31(c) of the Federal Rules of Criminal Procedure provides: "The defendant may be found guilty of an offense necessarily included in the offense charged." The rule has been authoritatively expounded by the Supreme Court. *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Analysis begins with the statutory elements of the offense. The Court teaches that the focus must be on the statutory elements of the offense. The proper test is whether the elements required to establish a violation of the greater crime necessarily encompass the elements required to establish a violation of the lesser crime. *Id.* at 716, 109 S.Ct. at 1450. The first question, therefore, is whether the crime of "knowingly engaging in sexual contact with another person without that other person's permission" is a lesser offense necessarily included within the greater crime of knowingly causing "another person to engage" in sexual contact by "placing that other person in fear." It is evident that to prove

that one caused another to engage in a sexual contact by placing that other person in fear requires proving that the other person has not given permission for the contact. Those in fear are incapable of granting permission. To prove that a person acted in fear is to prove that the act was without permission.

To commit either the greater or the lesser crime, an intent "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" is required. 18 U.S.C. § 2245(3). Hence the requirement that the same intention characterize each crime is satisfied. *United States v. Sneezer,* 900 F.2d 177, 178–79 (9th Cir. 1990).

■ The defendant is still not entitled under Rule 31(c) to the instruction unless the evidence in his case establishes a "factual basis" for the instruction. *United States v. Walker,* 915 F.2d 480, 486 (9th Cir.1990). "To demonstrate a factual basis for the instruction, [a defendant] must show that the evidence at trial was such 'that a jury could rationally find [him] guilty of the lesser offense, yet acquit him of the greater.'" *United States v. Powell,* 932 F.2d 1337, 1342 (9th Cir.1991) (quoting *Schmuck,* 489 U.S. at 716 n. 8, 109 S.Ct. at 1450 n. 8). Gavin did not meet this burden. His evidence at the trial was that the alleged touchings did not take place. He offered no evidence that the offense of which he was convicted took place without X's permission. He furnished no basis on which the trial court could have given an instruction on the lesser-included offense. *United States v. Torres,* 937 F.2d 1469, 1477 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992).

*Other Issues*

Gavin attacks the use of peremptory challenges by the prosecution to exclude two single white male members from the jury panel. *See Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Even if one were to accept Gavin's contention that "single white males" are a protected *Batson* class and his assertion that a prima facie case of purposeful discrimination has been made here, his challenge still fails. The trial court's finding that the government expressed a neutral, reasonable basis for its use of peremptory challenges is not clearly erroneous. *United States v. Power,* 881 F.2d 733, 739–40 (9th Cir.1989); *United States v. Lewis,* 837 F.2d 415, 416–17 (9th Cir.), *cert. denied,* 488 U.S. 923, 109 S.Ct. 304, 102 L.Ed.2d 323 (1988).

■ Gavin next challenges the trial court's modified *Allen* charge to the jury. There is no evidence at all that the *Allen* charge had a "coercive effect" on the jury, and the district court did not abuse its discretion in so finding. *United States v. Wauneka,* 842 F.2d 1083, 1088–89 (9th Cir. 1988). Gavin also claims that the juror's "experiment" entitles him to a new trial. But as the trial court found, the prosecution has proved beyond a reasonable doubt that the extrinsic evidence improperly introduced by the sleuthing juror was not relevant to the charge of conviction and that Gavin was not prejudiced by its introduction. *Marino v. Vasquez,* 812 F.2d 499, 504 (9th Cir.1987). Finally, Gavin was not entitled to a "specific unanimity" instruction as to the parts of the body he allegedly touched. *United States v. Anguiano,* 873 F.2d 1314, 1318–21 (9th Cir.) *cert. denied,* 493 U.S. 969, 110 S.Ct. 416, 107 L.Ed.2d 381 (1989).

AFFIRMED.

## ORDER

### June 26, 1992.

The motion of the United States, pursuant to 18 U.S.C. § 3509(d), to redact the opinion and court records in this case is GRANTED. Disclosure of the child victim's name would be "detrimental" to the child within the meaning of 18 U.S.C. § 3509(d)(3). The published opinion is ordered amended to redact the name of the child victim. All documents in this case that mention the name of the child victim are ordered sealed. Redacted versions of those same documents, attached as exhibits to the government's motion, are ordered to serve as the public record in this case.